| | | |
|---|---|---|
| **WILLIAM APODACA-FISK,** | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | EP-19-CV-00259-DCG |
| | § | |
| **GREG ALLEN,** *in his official capacity as* | § | |
| *Chief of the El Paso Police Department* **and** | § | |
| **JOHN DOE,** *an El Paso Police Department* | § | |
| *Officer in his individual capacity,* | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Presently before the Court is Defendants Chief Greg Allen and Officer John Doe's (collectively, "Defendants") "Rule 12 Motion to Dismiss and Brief in Support" (ECF No. 6) ("Motion") filed on October 14, 2019. Therein, Defendants request the Court to dismiss Plaintiff William Apodaca-Fisk's ("Plaintiff") Original Complaint (ECF No. 1) because Plaintiff has failed to state a claim under 42 U.S.C. § 1983 arising from Plaintiff's alleged improper inclusion in the Texas law enforcement gang database. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

### I. BACKGROUND

The following facts derive from Plaintiff's "Original Complaint" (ECF No. 1) (hereinafter, "Complaint") and, in this posture, are taken as true. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012).

Plaintiff is a former Army Command Sergeant Major who has served our country in eight combat deployments and has been recognized with numerous combat and service awards, including: the Legion of Merit, two awards of the Purple Heart, and five awards of the Bronze

Star for Valor. Compl. ¶¶ 6–7. Plaintiff is now retired and living in Las Cruces, New Mexico with his wife, a schoolteacher with whom he had his four children: a schoolteacher, two college students, and a PhD candidate at an Ivy League university. *Id.* ¶¶ 2, 8.

Although retired, Plaintiff continues to actively serve his community in a variety of ways, including: serving as the Senior Board Advisor for Mesilla Valley Community of Hope helping the homeless, serving as Co-Chair of Willie's Heroes Community Foundation for Wounded Warriors, serving as a member of the Las Cruces Mayor's Veteran Advisory Board, serving as Vice President of the Dona Ana County Humane Society, and as a board member of the Order of Purple Heart and National Association of Amputees. *Id.* ¶ 9. Plaintiff has also been recognized for his involvement in the community: he was awarded the Red Cross Regional Hero Award in 2016 for his work in raising more than $500,000 for Las Cruces veterans with various organizations. *Id.*

Plaintiff is also an active member of a motorcycle club named the "Squad Veteran Riders Motorcycle Club," in which he currently serves as President. *Id.* ¶ 10. The Squad Veteran Riders Motorcycle Club is a motorcycle club that is involved in community, charitable, and political activities. *Id.* All of its members are military veterans. *Id.* Plaintiff is also a board member of the National Council of Clubs and the Chair for the Southern New Mexico Council of Clubs.[1] *Id.*

On September 11, 2019, Plaintiff brought this lawsuit, under 42 U.S.C. § 1983, against Defendants Chief of Police Greg Allen—in his official capacity—and El Paso Police Department ("EPPD") Officer John Doe—in his individual capacity—for violations of his rights secured by

---

[1] The National Council of Clubs is an organization that facilitates an organized response to political and legal issues that impact the motorcycle club community. The New Mexico Council of Clubs is likewise a politically oriented entity. *Id.* ¶ 11.

the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution.[2] *Id.* at 1. Specifically, Plaintiff alleges that Defendants improperly included him into Texas's law enforcement statewide gang database ("TXGANG"). *Id.*

The TXGANG database is a statewide repository of records related to criminal street gangs and gang members. *Id.* ¶ 14. Texas Code of Criminal Procedure 67.054 sets forth the submission criteria that Texas law enforcement uses to determine who can be classified as a criminal street gang member in the database. *See* Tex. Code Crim. Proc. Ann. art. 67.054 (Vernon 2019). Under article 67.054, law enforcement can designate an individual as a criminal street gang member if: (1) a court judgment exists in which the court found that the individual committed a crime as a member of a criminal street gang; (2) an admission in a judicial proceeding exists in which the person admits to being in a criminal street gang; or (3) law enforcement observe two of the following:

> I. a self-admission by the individual of criminal street gang membership that is not made during a judicial proceeding, including the use of the Internet or other electronic format or medium to post photographs or other documentation identifying the individual as a member of a criminal street gang;
>
> II. an identification of the individual as a criminal street gang member by a reliable informant or other individual;
>
> III. a corroborated identification of the individual as a criminal street gang member by an informant or other individual of unknown reliability;
>
> IV. evidence that the individual frequents a documented area of a criminal street gang and associates with known criminal street gang members;
>
> V. evidence that the individual uses, in more than an incidental manner, criminal street gang dress, hand signals, tattoos, or symbols, including expressions of letters, numbers, words, or marks, regardless of how or the means by which the symbols are displayed, that are associated with a criminal street gang that operates in an area frequented by the individual;

---

[2] It appears that Plaintiff alleges more claims in his Complaint than those addressed by Defendants in their motion to dismiss the entire suit. The Court does not reach those claims that Defendants do not address in their motion.

VI. evidence that the individual has been arrested or taken into custody with known criminal street gang members for an offense or conduct consistent with criminal street gang activity; among other criteria.

VII. evidence that the individual has visited a known criminal street gang member, other than a family member of the individual, while the gang member is confined in or committed to a penal institution; or

VII. evidence of the individual's use of technology, including the Internet, to recruit new criminal street gang members.

*Id.*[3] Federal, state, and local law enforcement agencies have access to the database. Compl. ¶ 14. Once an individual has been designated as a criminal street gang member, the Texas Department of Public Safety's ("DPS") computerized criminal history records will show that the individual is considered a gang member by law enforcement. *Id.*

On information and belief, Plaintiff alleges that EPPD included him in the TXGANG database in 2017. *Id.* ¶ 13. On or about August 2017, Plaintiff attended another motorcyclist's funeral at a Catholic church in El Paso, Texas. *Id.* ¶ 19. Law enforcement heavily surveilled the funeral and took almost 4,000 photographs of the funeral's attendees and motorcycles, despite the fact that the Catholic church and cemetery are not documented areas of criminal street gang activity. *Id.* ¶ 20. After hearing in 2019 that other motorcyclists that attended the funeral had been included in the TXGANG database, Plaintiff contacted DPS and asked if his name was in it. *Id.* ¶ 21. DPS informed Plaintiff that his information was in fact in the TXGANG database and that the EPPD had input him into the database. *Id.*

By the instant lawsuit, Plaintiff seeks declaratory relief that Plaintiff's inclusion in TXGANG database was improper because (1) it violates his right to associate; (2) it attaches a

---

[3] However, Article 67.054(c) states that "[e]vidence described by Subsections (b)(2)(C)(iv) and (vii) is not sufficient to create the eligibility of a person's information to be included in an intelligence database described by this chapter unless the evidence is combined with information described by another subparagraph of Subsection (b)(2)(C)." *Id.*

stigma with legal disabilities (including deterring travel and preventing him from exercising his Second Amendment rights); (3) Texas Code of Criminal Procedure Article 67.054(b)(2)(C) is unconstitutionally vague overbroad; and (4) Texas Code of Criminal Procedure Articles 67.202-.203 violate substantive and procedural Due Process. *Id.* at 1.  On October 14, 2019, Defendants filed the instant motion to dismiss for failure to state a claim. *See* Mot., ECF No. 6.

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet the "facial plausibility" standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).  "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

On a Rule 12(b)(6) motion, the court "must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes and citations omitted).  "*Iqbal* does not allow us to question the

credibility of the facts pleaded .... *Iqbal*, instead, tells us to assume the veracity of well-pleaded factual allegations." *Ramirez v. Escajeda*, 921 F.3d 497, 501 (5th Cir. 2019) (alteration, internal quotes, and citations omitted).

Finally, in deciding the motion, "a district court may not go outside the complaint." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (internal quotes and citations omitted). The court may, however, "rely on documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotes and citations omitted).

## III. DISCUSSION

Plaintiff asserts a claim against Chief Allen in his official capacity for the failure to properly train the officers under his command on inputting people suspected of being criminal street gang members. Compl. ¶¶ 41–42. Plaintiff also asserts a claim against EPPD Officer John Doe in his individual capacity for improperly inputting Plaintiff into the TXGANG database "when there was no reason to believe" Plaintiff was involved in criminal activity or was a member of a criminal street gang. *Id.* ¶¶ 43–45.

By their motion, Defendants ask the Court to dismiss all of Plaintiff's claims against them: (1) on the qualified immunity ground; (2) for failure to exhaust available state remedies; (3) for lack of injury or actual controversy to entitle him to declaratory judgment; and (4) for failure to state a claim under § 1983. Mot. at 2, 4, 5, 6. The Court addresses each of Defendants' arguments in that order.

### A. Qualified Immunity

Defendants assert the defense of qualified immunity against Plaintiff's § 1983 claim. Mot. at 5. Defendants argue that Plaintiff's complaint fails to "plausibly pierce the defense of

qualified immunity" and thus, fails to state a claim upon which relief can be granted. *Id.* Plaintiff responds that he is seeking declaratory relief only, not monetary damages, and as such, Defendants' "assertion of qualified immunity is frivolous." Resp. in Opp. at 3, ECF No. 7. The Court agrees with Plaintiff that Defendants cannot assert the defense of qualified immunity when the instant suit only seeks declaratory relief and not money damages.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee*, 675 F.3d at 854. At the motion to dismiss stage, if a defendant invokes qualified immunity, an affirmative defense, the burden shifts to the plaintiff to plead facts that demonstrate the inapplicability of the defense. *Club Retro, L.L.C.*, 568 F.3d at 194; *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019). To discharge this burden, he must "plead[] facts showing (1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotes and citations omitted).

However, it is well established law in the Fifth Circuit that qualified immunity only extends to § 1983 claims for money damages. *See Robinson v. Hunt Cty., Tex.,* 921 F.3d 440, 452 (5th Cir. 2019), *reh'g denied* (May 16, 2019); *Morgan v. Swanson*, 659 F.3d 359, 365 n.3 (5th Cir. 2011) (*en banc*); *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 n.1 (5th Cir. 1997); *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991). Qualified immunity only protects officials when they are threatened with personal liability because "official immunity doctrines are premised upon the concern that the threat of personal liability may deter government officials from executing their offices with the decisiveness and

-7-

good faith judgment required for the public good." *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 134 (5th Cir. 1986).

Because Plaintiff's instant lawsuit seeks declaratory relief and no money damages, Defendants' argument of qualified immunity is without merit. *See Waller v. Hanlon*, 922 F.3d 590, 598 (5th Cir. 2019) (noting that defendants could not assert qualified immunity against plaintiffs' declaratory judgment claims).

## B. Failure to Exhaust State Remedies

Defendants contend that Plaintiff must exhaust his state judicial and administrative remedies available through the procedures outlined in Tex. Code Crim. Proc. Articles § 67.201–.203 because his claim involves procedural due process and requests declaratory relief. Mot. at 5. Plaintiff counters that the United States Supreme Court has repeatedly rejected the argument that plaintiffs must exhaust available state judicial and administrative remedies before filing a § 1983 lawsuit. Resp. in Opp. at 3. The Court agrees with Plaintiff that exhaustion of available state remedies is not a prerequisite to an action under § 1983.

The United States Supreme Court has held that plaintiffs need not exhaust available state remedies as a prerequisite to file a § 1983 claim. *Brantley v. Surles*, 718 F.2d 1354, 1360 (5th Cir. 1983) (citing *Patsy v. Bd. of Regents of the State of Fla.,* 457 U.S. 496, 500–01 (1982)). The Supreme Court explained that:

> The 1871 Congress intended [§ 1983] to throw open the doors of the United States courts to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights . . . and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary.

*Id.* (quoting *Patsy*, 457 U.S. at 504) (brackets in original); *see also Steffel v. Thompson*, 415 U.S. 452, 472–73 (1974) ("When federal claims are premised on [§ 1983]—as they are here—we

have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights."). As Plaintiff correctly points out, the only instance where a "specific, limited exhaustion requirement" for bringing an action under § 1983 exists is in prisoner cases. *Gartrell v. Gaylor*, 981 F.2d 254, 258 (5th Cir. 1993) (quoting *Patsy*, 457 U.S. at 508). Therefore, Plaintiff is not required to exhaust the available state judicial and administrative remedies before the Court can hear his § 1983 claim against Defendants.

## C. Injury and Actual Controversy

Defendants assert that Plaintiff's case against them is "entirely speculative" because Plaintiff has failed to allege any single instance when he was deprived of his constitutional rights as a result of his inclusion on the TXGANG database. Mot. at 7. Further, Defendants state that Plaintiff's claim is not ripe for declaratory judgment as it presents no actual controversy because any potential violations of Plaintiff's rights, if any, "are not plausibly going to occur in the future." *Id.* at 7–8. Put differently, Defendants seek to dismiss Plaintiff's § 1983 suit seeking declaratory relief for lack of injury and actual controversy.

Under Article III of the Constitution, a plaintiff must establish standing to sue to satisfy the "Cases" and "Controversies" requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (citations omitted) (brackets in original).[4] "A plaintiff

---

[4] The Court does not reach the requirements of causation and redressability because, in their Motion, Defendants only appear to challenge the injury-in-fact requirement in the standing analysis.

can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201–2202, by establishing 'actual present harm or a significant possibility of future harm, . . . even though the injury-in-fact has not yet been completed." *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003) (internal citations omitted).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## 1. Injury

To satisfy the injury prong to establish standing, the harm to plaintiff must have already occurred or it must be likely to occur "imminently." *Defenders of Wildlife*, 504 U.S. at 560. "Imminent" means "certainly impending," not just a mere "possible future." *Clapper*, 568 U.S. at 409; *see also Bauer*, 341 F.3d at 358 ("[T]o demonstrate that a case or controversy exists to meet Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

Plaintiff claims that his alleged improper inclusion in the TXGANG database injures him by: (1) violating his right to associate under the First Amendment; and (2) attaching a stigma

with legal disabilities (including deterring travel and preventing him from exercising his Second Amendment rights) under the Fourteenth Amendment's Due Process Clause. Compl. at 1. For the reasons that follow, the Court concludes that while Plaintiff has failed to allege an injury in his right-to-associate claim under the First Amendment, he has properly done so in his "stigma-plus" claim under the Fourteenth Amendment's Due Process Clause.

### a. Right to Associate under the First Amendment

The First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). The Supreme Court has recognized two strands of this constitutional right. *Hobbs v. Hawkins*, 968 F.2d 471, 482 (5th Cir. 1992) (citing *Roberts*, 468 U.S. at 617–18). The first strand involves an individual's fundamental personal liberty "to enter into and maintain certain intimate human relationships," such as marriage and family. *Id.* (citing *Roberts*, 468 U.S. at 617–19). In contrast, the second strand involves an individual's associational rights that derive from the First Amendment rights of speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id.* This second strand of associational rights, also known as "expressive association," is guaranteed by the Constitution "as an indispensable means of preserving other individual liberties." *Id.* (quoting *Roberts*, 468 U.S. at 618). Members of a group who "regularly engage in a variety of civic, charitable, lobbying, fundraising, and other activities" are entitled to constitutional protection. *Roberts*, 468 U.S. 626–27. "An association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000).

The Supreme Court has "consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular association." *Healy v. James*, 408 U.S. 169, 185–86 (1972). "[G]uilt by association alone, without establishing that an individual's association poses the threat feared by the Government, is an impermissible basis upon which to deny First Amendment rights." *Id.* at 186 (internal quotes and citations omitted). Hence, even a "chilling effect" resulting from a First Amendment violation may constitute a harm to satisfy the injury-in-fact requirement. *Houston Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 618 (5th Cir. 2007) (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987)). However, a plaintiff cannot satisfy the injury requirement based on First Amendment violations by simply claiming a "chilling effect" alone from a governmental policy that does not regulate, constrain or compel any action on the part of the plaintiff. *Clapper*, 568 U.S. at 418. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Here, Plaintiff pleaded that he is a member of a motorcycle club that "is involved in community, charitable, and political activities," and that "[t]he stigma of being in the gang database chills [his] right to associate" with it. Compl. at 3, 13. Thus, Plaintiff's claim appears to fall within the second strand of associational rights protected by the First Amendment. However, Plaintiff does not identify the motorcycle club's "community, charitable, and political activities" or viewpoints—political, social, or otherwise—that are harmed by Plaintiff's inclusion into the TXGANG database. *See Hudson v. City of Los Angeles*, No. CV-06-942-DSF, 2006 WL 4729243, at *7 (C.D. Cal. Sept. 7, 2006) ("Plaintiff has failed to allege any facts showing that the motorcycle clubs he associated with were engaged in expressive activity. Plaintiff has not alleged that any of

the clubs advocated any viewpoints, political, social, or otherwise. Likewise, Plaintiff has not alleged that the clubs were formed to foster any particular set of beliefs, nor does he allege that they promote any particular lifestyle.").

Further, even when presuming that Plaintiff's general allegations embrace those specific facts necessary to support his claim, the Complaint is unclear as to how exactly this alleged "stigma" objectively chills Plaintiff's right to associate and prevents him from participating in expressive activities protected by the First Amendment. In other words, since the TXGANG database does not appear to "regulate, constrain, or compel any action" on the part of Plaintiff, then, an alleged chilling effect alone cannot constitute an injury in fact. *Clapper*, 568 U.S. at 418. Therefore, Plaintiff has not demonstrated a specific present objective harm or threat of a specific future harm beyond mere subjective chill. *Laird*, 408 U.S. at 13–14. Accordingly, the Court concludes that Plaintiff has failed to properly plead an injury in fact for his First Amendment claim. The Court dismisses Plaintiff's right-to-associate claim with leave to amend.

### b. Due Process + Second Amendment (Stigma Plus)

"Where a person's good name, reputation, honor, or integrity is at stake [b]ecause of what the government is doing to him, notice and an opportunity to be heard are essential." *Paul v. Dàvis*, 424 U.S. 693, 708 (1976) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). Hence, "where the State attaches 'a badge of infamy' to the citizen[,] due process comes into play." *Paul*, 424 U.S. at 707 (quoting *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952)). For this reason, "damage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983." *Tex. v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995) (citing *Paul*, 424 U.S. at 710–12).

For this type of claims, the Fifth Circuit has consistently required "that a section 1983 [plaintiff] show a stigma *plus* an infringement of some other interest." *See San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991) (emphasis in original) (citing cases). "To fulfill the stigma aspect of the equation, a claimant must prove that the stigma was caused by a false communication." *Id.* (citing *Codd v. Velger*, 429 U.S. 624, 627 (1977)) (internal quotes omitted). Courts will find sufficient "stigma" only in concrete, false factual representations or assertions, by the government, of wrongdoing on the part of the plaintiff. *Id.* (citing *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989)). And for the "infringement" prong, a plaintiff must establish that the government "sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been 'incorporated.'" *Id.* at 701–02 (citing *Paul*, 424 U.S. at 710–11 & n.5). The government removes or significantly alters an individual's life, liberty, or property interest when "a change of legal status occurs where an individual 'legally [cannot] do something that [he] could otherwise do." *Pedrote-Salinas v. Johnson*, 17 C 5093, 2018 WL 2320934, at *6 (N.D. Ill. May 22, 2018) (quoting *Miller v. Cal.*, 355 F.3d 1172 , 1178–79 (9th Cir. 2004) (discussing *Constantineau*, 400 U.S. at 437))).

Regarding the "stigma" prong of the "stigma-plus" test, drawing all inferences in favor of Plaintiff, the Court concludes that he satisfies it because he pleaded a plausible concrete, false factual representation or assertion by Defendants. Plaintiff pleaded that, despite the fact that he "is not now, nor has he ever been, a member of a criminal street gang," that he is actively serving his community, and that he has never been arrested or had any kind of encounters with Texas law enforcement, Defendants still inputted him into the TXGANG database and labeled him a gang member. Compl. at 2–4, 7. "There is no question that being labeled a gang member harms one's

reputation." *Pedrote-Salinas*, 2018 WL 2320934, at *5. Being labeled a gang member in a law enforcement database carries with it a stigma that is tied with "a host of unfortunate implications such as involvement in criminal conduct." *Id.* Thus, accepting as true all material allegations of the Complaint, Plaintiff pleaded a concrete, false factual representation or assertion, by Defendants, of wrongdoing on his part. *Warth*, 422 U.S. at 501.

Yet, Defendants argue that Plaintiff failed to allege an injury because he did not cite to "any instance of where his reputation has been defamed[,] as the information in TXGANG is confidential and may not be released to the public." Mot. at 7. But courts have found that a stigmatizing label can be sufficiently public even when the government shares it only with other governmental entities and agencies on a "need to know" basis. *Pedrote-Salinas*, 2018 WL 2320934, at *5 (finding that defendants' sharing of plaintiff's gang-member designation with immigration officials was sufficiently public to meet the first prong of the stigma-plus test); *Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir. 1978) (finding the Civil Service Commission's sharing of plaintiff's stigmatizing label with federal agencies on a need to know basis was sufficiently public); *Castillo* v. *Cty. of Los Angeles*, 959 F.Supp.2d 1255, 1261–62 (C.D. Cal. 2013) (finding plaintiff's inclusion in Child Welfare Services Case Management System sufficiently public where information in the database was not publicly available but was available to numerous in-state and out-of-state governmental entities and agencies).

Here, Plaintiff pleaded that the defamatory TXGANG information is sufficiently public because the individuals that can access the database may include security officials at the military base to which Plaintiff travels for his retirement benefits and health services, as well as "a wide variety of individuals that are not themselves police officers or any official investigating any crimes." Compl. ¶¶ 28–29. On that basis, the Court—like other courts—concludes that

Plaintiff's alleged defamation is sufficiently public because Texas law enforcement provides access to other participating criminal justice agencies to the TXGANG database on a "need to know" basis "to obtain or receive criminal intelligence information in the performance of an official duty or responsibility." *Id.*, Ex. 5 at 2–5.

For the "infringement" portion, Plaintiff pleaded that "[t]he stigma of being in the gang database . . . affects his Second Amendment right to carry a handgun in his vehicle[.]" *Id.* ¶ 39. Specifically, Plaintiff pleaded that his inclusion in the TXGANG database burdens his right to carry because—despite his valid license to carry—he now fears prosecution under the Texas Penal Code if he carries a firearm in his vehicle during his regular trips to El Paso for veteran services and his occasional flights from the airport. *Id.* ¶ 25; Resp. in Opp. at 9–10. Further, Plaintiff pleaded that Defendants labeled him a "criminal street gang member" in the database and deprived him of his right to carry without due process because he was not afforded notice or opportunity to be heard "to challenge the inclusion before or after it was made." Compl. ¶ 26 ; Resp. in Opp. at 11–12. Construing the Complaint in favor of Plaintiff, the Court is of the view that Plaintiff has pleaded enough facts to establish that Defendants "sought to remove or significantly alter [his Second Amendment right to carry, as] recognized and protected by . . . one of the provisions of the Bill of Rights that has been 'incorporated.'" *Kacal*, 928 F.2d at 701–02 (citing *Paul*, 424 U.S. at 710–11 & n.5).

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570 (2008) that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Natl. Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 346

(5th Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008)). "The 'central component of [this] right' is self-defense." *Id.* (quoting *Heller*, 554 U.S. at 599). The Supreme Court has also held that the Second Amendment right is fully applicable to the states through the Fourteenth Amendment. *Id.* at 346 n.6 (citing *McDonald v. City of Chi.*, 561 U.S. 742, 778 (2010)). However, the Supreme Court also noted that "the right was not unlimited, just as the First Amendment's right of free speech was not." *Id.* at 346 (quoting *Heller*, 554 U.S. at 595). Several presumptively lawful regulatory measures on the right to carry firearms include: "prohibitions on the possession of firearms by felons and the mentally ill, . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, [laws imposing age-based restrictions], [and] laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 346, 349 (quoting *Heller*, 554 U.S. at 626–27 & n.26).

To date, Texas law makes it categorically unlawful for "a member of a criminal street gang" to carry weapons in a vehicle, regardless of whether the gang member has a license to carry. Tex. Penal Code Ann. § 46.02 (a-1)(2)(C) (Vernon 2019). The Texas Penal Code defines "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." Tex. Penal Code Ann. § 71.01 (d) (Vernon 1995). While the Texas Penal Code does not define what is "a member of a criminal street gang," the Operating Policies and Procedures of the TXGANG database provide that a "criminal street gang member" is "an individual who has been identified as a member of a gang through documentation consisting of at least two of the ID criteria listed under [Article 67.054(b)(2)(C)]." Compl., Ex. 5 at 3; *see also id.* at 5 ("DPS does not require that an individual must have been arrested for the crime being investigated or any other crime, before an authorized user can properly submit information to TXGANG

identifying: . . . the individual as a gang member[.]"). This "criminal street gang member" identification—or label—in the database lasts for a period of at least five years, after which, law enforcement can either remove or extend it depending on whether the inputted individuals were arrested or taken into custody within that time period. *Id.* at 7. To that end, drawing all inferences in favor of Plaintiff, it appears to the Court that individuals who have met the two criteria in Article 67.054 and are inputted to the TXGANG database as "criminal street gang members" can be arrested for unlawfully carrying a weapon in a vehicle for a period of at least five years.

Further, as Defendants have stated, individuals inputted into the TXGANG database receive no notice that law enforcement has labeled them "criminal street gang members" because "doing so would compromise the safety of law enforcement personnel and the efficacy of anti-gang intelligence gathering operations." Mot. at 6. If such individuals wish to find out whether they have been inputted into the database, they must independently make a request to Texas law enforcement asking for the existence of their identification as a gang member in the database. *See* Tex. Code Crim. Proc. Ann. art. 67.201(a) (Vernon 2019) ("A person . . . may request that a law enforcement agency determine whether the agency has collected or is maintaining, under submission criteria established under Article 67.054(b), criminal information relating solely to the person[.]"). To this end, individuals that are labeled "criminal street gang members" in the TXGANG database will receive no notice that, for at least five years, they may now be prosecuted under the Texas Penal Code for unlawfully carrying firearms in their vehicles.

In view of the ensuing legal implications from the "criminal street gang member" label, Plaintiff's allegations satisfy the "infringement" prong because they establish that his inclusion in the TXGANG database carries with it "a change of legal status" where he cannot legally carry

-18-

a firearm in his vehicle during his regular trips to Fort Bliss and the airport in El Paso, which he could otherwise legally do in the past. *Pedrote-Salinas*, 2018 WL 2320934, at *6 (quoting *Miller*, 355 F.3d at 1178–79 (discussing *Constantineau*, 400 U.S. at 437))).

### 2. *Actual Controversy*

Nevertheless, Defendants contend that Plaintiff does not present a ripe actual controversy because his inclusion in the database "does not affect him in any functional way" and that "[a]ny assertion by . . . Plaintiff that he is facing some imminent harm is nothing more than wild and baseless speculation." Mot. at 7–8. But the Court disagrees.

A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). "The 'actual controversy' required under 28 U.S.C. § 2201(a) 'is identical to the meaning of 'case or controversy' for the purposes of Article III.'" *Bauer*, 341 F.3d at 358 (quoting *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997)) "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" *Wolfe*, 212 F.3d at 896 (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). A plaintiff can establish an "actual controversy" by demonstrating 'actual present harm or a significant possibility of future harm, . . . even though the injury-in-fact has not yet been completed." *Bauer*, 341 F.3d at 357–58 (internal citations omitted).

"An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) (quoting *Susan B. Anthony List.*, 573 U.S. at 158). "But where a plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional

interest . . . and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)) (internal quotes omitted). Requiring that a plaintiff must break the law to test its constitutionality is to risk punishing him for conduct that he may have honestly thought was constitutionally protected. *Intl. Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821 (5th Cir. 1979). "Not only is this *prima facie* unfair, but it discourages people from engaging in protected activity and enforcing constitutional rights." *Id.*

Here, construing the Complaint in Plaintiff's favor, his "stigma-plus" claim presents an actual controversy because his allegations of future injury sufficiently establish that there is a substantial risk that harm will occur. In particular, Plaintiff pleaded enough facts demonstrating that (1) he intends to exercise his Second Amendment right to carry a firearm in his vehicle for self-defense during his regularly trips to El Paso; and (2) he faces a credible threat of prosecution under § 46.02 (a-1)(2)(C) of the Texas Penal Code for doing so.

First, Plaintiff pleaded that he "must travel to El Paso to receive extensive medical and mental healthcare through [Veterans Affairs], and to use retirement benefits at Fort Bliss" and that he "occasionally travels by air" from the El Paso airport because it has "the only convenient regional airport." Compl. ¶ 25. And second, Plaintiff sufficiently pleaded that he "has a legitimate fear of being arrested for unlawful carry" under § 46.02 (a-1)(2)(C) of the Texas Penal Code because the State of Texas actively prosecutes individuals for unlawfully carrying firearms based on membership in a criminal street gang. *Id.* ¶ 24 (citing news articles); *see also* Resp. in Opp. at 14 (citing *State's Brief in Ex Parte Christian Charles Lee*, No. 01-08-009690CR, at *5 (pending in Tex. App.—Houston [1st Dist.]) and Jessica Gonzalez, *New Mexico Bandidos*

*member arrested in El Paso for unlawful carrying of weapons*, CBS 4 Local News (Aug. 11, 2017), https://cbs4local.com/news/local/new-mexico-bandidos-member-arrested-in-el-paso-for-unlawful-carrying-of-weapons). As such, Plaintiff's allegations demonstrate that Section 46.02 (a-1)(2)(C) "is not a mere paper tiger but has a real history of enforcement." *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018), *as revised* (Aug. 9, 2018); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 15–16 (2010) (relying on the fact that the government had charged about 150 people with violating the statute at issue to find that plaintiffs faced "a credible threat of prosecution.").

Besides, as Plaintiff states: Defendants "*never* argue[] . . . that [they] would not arrest [Plaintiff] for unlawful carry. If the injury alleged here was so speculative, Defendant[s] . . . could easily clear this up by stating that [they] would not arrest [Plaintiff] for unlawful carry." Resp. in Opp. at 15 (emphasis in original). "Whether the government disavows prosecution is a factor in finding a credible threat of prosecution." *Seals*, 898 F.3d at 592; *see, e.g.*, *Humanitarian Law Project*, 561 U.S. at 16 ("The Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do."); *Babbitt*, 442 U.S. at 302 ("[T]he State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices. Appellees are thus not without some reason in fearing prosecution[.]"). Thus, Plaintiff's pleaded facts—that the State of Texas is actively prosecuting individuals under § 46.02 (a-1)(2)(C) and that Defendants did not disavow prosecution if Plaintiff engaged in his intended course of conduct—viewed together, show that he has "a credible threat of prosecution." Plaintiff has therefore established that his "stigma-plus" claim presents a ripe actual controversy because he has established having "a concrete stake in this litigation." *Seals*, 898 F.3d at 592. Accordingly, Plaintiff "should not be required to

await and undergo a criminal prosecution as the sole means of seeking relief." *Cruz*, 849 F.3d at 598.

**D. Alleged Deprivation Committed by a Person Acting under Color of State Law**

Defendants finally argue that Plaintiff "utterly fails to establish the required elements of a § 1983 action in relation to [Defendant Allen], instead relying entirely on theories of *respondeat superior* to tie . . . Allen to his yet to occur damage with only the most tenuous of conclusory threads." Mot. at 4. Put another way, Defendants argue that Plaintiff failed to allege enough facts to "demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee*, 675 F.3d at 854. In response, Plaintiff asserts that he has properly pled an official-capacity lawsuit against Defendant Allen alleging that he is the "agency head" established as the policy maker responsible for improper submissions into the TXGANG database. Resp. in Opp. at 4. Accepting as true all material allegations of the Complaint, the Court concludes that Plaintiff has alleged enough facts to establish that Defendant Allen allegedly deprived him of his rights while acting under color of state law.

"A lawsuit 'against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In other words, "[t]he division of government in which the official works is responsible for a judgment in an official-capacity lawsuit." *Id.* Here, Plaintiff is suing Defendant Allen in his official capacity as Chief of the EPPD, a governmental body of the City of El Paso. Thus, the Court construes Plaintiff's lawsuit as a § 1983 claim against the City of El Paso.

Local governments may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected to such

-22-

deprivation.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). But local governments "are responsible only for 'their *own* illegal acts' . . . [and] [t]hey are not vicariously liable under § 1983 for their employees' actions." *Id.* (emphasis in original) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Monell*, 436 U.S. at 691). Hence, a plaintiff who seeks to impose liability on a municipality under § 1983 must prove that "action pursuant to official municipal policy" caused his injury. *Monell*, 436 U.S. at 691, 694. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 561 U.S. at 61 (citations omitted). For that reason, "[a] policy or custom may be attributed to a municipal defendant through the identification of a final policymaking authority." *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019), *cert. denied sub nom. Garza v. Donna, TX*, 19-276, 2019 WL 6689669 (U.S. Dec. 9, 2019) (citations omitted). Identification of policymaking officials is not a question of federal law, but a question of state and local law. *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)).

Here, Plaintiff identifies Allen, as Chief of the EPPD, as the final policy making official to whom the failure to train is attributable. The Fifth Circuit has consistently found without dispute that Texas police chiefs are the final policymakers for their municipalities. *Id.*; *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847–48 (5th Cir. 2009); *Lewis v. Pugh*, 289 F. App'x 767, 776 (5th Cir. 2008). Further, the agreements entered between local law enforcement agencies and DPS regarding the use of the TXGANG database establish that "Participating Agenc[ies]" agree, among other things, to: (1) "[e]nsure that all users that are provided access within the agency are

authorized users, properly trained, and using appropriate electronic transmission"; and (2) "[b]e responsible for the quality of the information submitted and for modifying or deleting a record if necessary." Compl., Ex. 2 at 1. As Plaintiff contends, Defendant Allen is the "agency head"—that is, the "final policymaking authority"—for the EPPD, the "Participating Agency" that entered into an agreement with DPS to use the TXGANG database. Resp. in Opp. at 5–6; *see also* Tex. Gov't Code § 441.180(1) (defining "agency head" as "the appointed or elected official who serves by the state constitution, state statute, or action of the governing body of a state agency as the chief executive and administrative officer of a state agency). Therefore, Plaintiff has properly alleged that Defendant Allen is the final policymaker to whom Plaintiff's failure-to-train claim is attributable.

For a municipality's failure to train its employees to be "properly thought of as a city 'policy or custom' that is actionable under § 1983'", the municipality's failure to train must amount to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick*, 563 U.S. at 61 (quoting *Canton v. Harris*, 489 U.S. 378, 388–89 (1989)) (alterations omitted). Deliberate indifference is a stringent standard of fault, requiring proof that the policymaker—to whom the policy is attributable—disregarded a known or obvious consequence of his action. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381–82 (5th Cir. 2005). A showing of a single instance of unconstitutional activity resulting from a failure to train is generally not sufficient to establish deliberate indifference. *Valentine Found. v. Uphoff*, 211 F. App'x 276, 278 (5th Cir. 2006) (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). But the plaintiff may establish deliberate indifference based on a single decision by a policy maker if the constitutional violation was "the highly predictable consequence of a particular failure to train." *Davidson v. City of Stafford*,

*Tex.*, 848 F.3d 384, 397 (5th Cir. 2017), *as revised* (Mar. 31, 2017); *Brown v. Bryan Cty., OK*, 219 F.3d 450, 461–62 (5th Cir. 2000).

The Fifth Circuit has previously noted that, in establishing deliberate indifference in cases involving failure-to-train claims, "the consequence of failing to train a single law enforcement officer as to a specific skill necessary to discharge his duties is far more predictable than is the consequence of a single hiring decision." *Brown*, 219 F.3d at 461. "[T]he focus [on this issue] must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *Canton*, 489 U.S. at 390. Simply put, Plaintiff must plead facts supporting deliberate indifference by Defendant Allen to a specific inadequacy in the training of EPPD officers that closely relates to Plaintiff's improper inclusion in the TXGANG database.

Accepting all well-pleaded facts as true and drawing all inferences in favor of Plaintiff, the Court is of the view that he has pleaded enough facts to establish deliberate indifference. Plaintiff pleaded that Defendant Allen's failure to train Defendant Doe "as to the two Submission Criteria requirement under [Article] 67.054(b)(2)(C) . . . caused Plaintiff to be input into TXGANG based on a single (questionable) criteria . . . without an additional criteria to support his inclusion into the database[.]" Compl. ¶ 42. Specifically, Plaintiff alleged that:

> [A]ssuming that [Defendant] Doe inputted [Plaintiff] into the gang database based on photographs of him and his motorcycle, the statutory criteria for including someone into TXGANG requires more than mere use of words and symbols (like patches on motorcycle club vests or stickers on motorcycles). Texas Code of Criminal Procedure article 64.054(b)(2)(C) requires that *two* of the criteria be met before inputting the person. Neither [Plaintiff's] motorcycle club vest nor his motorcycle would support his inclusion into TXGANG. Even if they did, however, there was not a second criteria to support [his] inclusion into the database.

*Id.* ¶ 17 (emphasis in original). Further, as the DPS agreement and the TXGANG Operating Policies and Procedures make clear, training is required for those individuals inputting

an individual's information into the TXGANG database based on the criteria outlined in Article 67.054(b)(2)(C). *Id.*, Ex. 2 at 1; Ex. 5 at 9. Thus, it follows that a "highly predictable consequence of a particular failure to train" a single law enforcement officer as to the two Submission Criteria requirement in Article 67.054(b)(2)(C) is the improper submission of an individual who is not a member of a criminal street gang into the database. *Davidson*, 848 F.3d at 397. In short, Plaintiff has pleaded enough facts indicating the existence of a specific inadequacy in the training of EPPD officers that closely relates to Plaintiff's improper inclusion in the TXGANG database.

Accordingly, Plaintiff has properly alleged that his improper inclusion into the TXGANG database was caused by Defendant Allen, who, while acting under color of state law, failed to train Defendant Doe as to the two Submission Criteria requirement under Article 67.054(b)(2)(C).

## IV. CONCLUSION

In sum, the Court concludes that Plaintiff has "nudged [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and sufficiently pleaded facts that demonstrate the inapplicability of Defendants Allen and Doe's defense of qualified immunity. The Court echoes the Fifth Circuit:

> We have only heard one side of the story. After discovery is complete, the district court may well correctly determine that none of [Plaintiff's] claims can survive summary judgment. But at the motion to dismiss stage, we are bound to accept his allegations as true. And on the facts alleged, [Plaintiff] has stated several constitutional claims.

*Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017).

Accordingly, **IT IS ORDERED** that Defendants Greg Allen and John Doe's ""Rule 12 Motion to Dismiss and Brief in Support" (ECF No. 6) is **GRANTED IN PART, DENIED IN**

**PART**.  The Motion is **GRANTED** as to Plaintiff William Apodaca-Fisk's right-to-associate claim under the First Amendment.  The Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff William Apodaca-Fisk **SHALL** have leave to amend his Complaint to cure the pleading deficiencies noted herein.

**So ORDERED and SIGNED this** *13* **day of January 2020.**

DAVID C. GUADERRAMA
**UNITED STATES DISTRICT JUDGE**