UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **WILLIAM APODACA-FISK**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **GREG ALLEN**, *in his official capacity as* | § | **EP-19-CV-00259-DCG** |
| *Chief of the El Paso Police Department* **and** | § | |
| **FRANCISCO BALDERRAMA**, *an El* | § | |
| *Paso Police Department Officer in his* | § | |
| *individual capacity*, | § | |
| | § | |
| *Defendants*. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Presently before the Court is Defendant Francisco Balderrama's ("Detective Balderrama") "Rule 12 (b)(6) Motion to Dismiss Plaintiff's First Amendment Claims in his First Amended Complaint" (ECF No. 27) ("Motion") filed on August 13, 2020. Therein, Detective Balderrama requests the Court to dismiss Plaintiff William Apodaca-Fisk's ("Plaintiff") right-to-associate claims in his "First Amended Complaint" (ECF No. 16) because Plaintiff has failed to state a claim upon which relief can be granted. Mot. at 1, ECF No. 27. For the reasons that follow, the Court **GRANTS** Detective Balderrama's Motion.

## I.   BACKGROUND

The following facts derive from Plaintiff's "First Amended Complaint" (hereinafter, "Amended Complaint") and, in this posture, are taken as true. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012).

Plaintiff is a former Army Command Sergeant Major who has served our country in eight combat deployments and has been recognized with numerous combat and service awards, including: the Legion of Merit, two awards of the Purple Heart, and five awards of the Bronze

Star for Valor.  Am. Compl. ¶¶ 6–7, ECF No. 16.  Plaintiff is now retired and living in Las

Cruces, New Mexico with his wife, a schoolteacher with whom he had his four children: a

schoolteacher, two college students, and a PhD candidate at an Ivy League university.  *Id.* ¶¶ 2,

8.

 Although retired, Plaintiff continues to actively serve his community in a variety of ways,

including: serving as the Senior Board Advisor for Mesilla Valley Community of Hope helping

the homeless, serving as Co-Chair of Willie's Heroes Community Foundation for Wounded

Warriors, serving as a member of the Las Cruces Mayor's Veteran Advisory Board, serving as

Vice President of the Dona Ana County Humane Society, and serving as a board member of the

Order of Purple Heart and National Association of Amputees.  *Id.*  ¶ 9.  Plaintiff has also been

recognized for his involvement in the community: he was awarded the Red Cross Regional Hero

Award in 2016 for his work in raising more than $500,000 for Las Cruces veterans with various

organizations.  *Id.*

 Plaintiff is also an active member of a motorcycle club named the "Squad Veteran Riders

Motorcycle Club," in which he currently serves as President.  *Id.* ¶ 10.  The Squad Veteran

Riders Motorcycle Club is a motorcycle club that is involved in community, charitable, and

political activities.  *Id.*  Some of these activities include routinely helping raise money for Breast

Cancer Awareness and escorting Veterans of World War II and the Korean War on Honor Flight

escort trips in Texas.  *Id.* n.1.  All of its members are military veterans.  *Id.*  Plaintiff is also a

board member of the National Council of Clubs and the Chair for the Southern New Mexico

Council of Clubs.[1]  *Id.*

---

[1]  The National Council of Clubs is an organization that facilitates an organized response to
political and legal issues that impact the motorcycle club community.  The New Mexico Council of Clubs
is likewise a politically oriented entity.  *Id.* ¶ 11.

On September 11, 2019, Plaintiff brought this lawsuit, under 42 U.S.C. § 1983, against Defendants Chief of Police Greg Allen ("Chief Allen")—in his official capacity—and El Paso Police Department ("EPPD") Detective Francisco Balderrama—in his individual capacity—for violations of his rights secured by the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution.  *Id.* at 1.  Specifically, Plaintiff alleges that Defendants improperly included him into Texas's law enforcement statewide gang database ("TXGANG").  *Id.*

The TXGANG database is a statewide repository of records related to criminal street gangs and gang members.  *Id.* ¶ 14.  Article 67.054 of the Texas Code of Criminal Procedure sets forth the submission criteria that Texas law enforcement uses to determine who can be classified as a criminal street gang member in the database.  *See* Tex. Code Crim. Proc. Ann. art. 67.054 (Vernon 2019)  Under article 67.054, law enforcement can designate an individual as a criminal street gang member if: (1) a court judgment exists in which the court found that the individual committed a crime as a member of a criminal street gang; (2) an admission in a judicial proceeding exists in which the person admits to being in a criminal street gang; or (3) law enforcement observe two of the following:

> I. a self-admission by the individual of criminal street gang membership that is not made during a judicial proceeding, including the use of the Internet or other electronic format or medium to post photographs or other documentation identifying the individual as a member of a criminal street gang;
>
> II. an identification of the individual as a criminal street gang member by a reliable informant or other individual;
>
> III. a corroborated identification of the individual as a criminal street gang member by an informant or other individual of unknown reliability;
>
> IV. evidence that the individual frequents a documented area of a criminal street gang and associates with known criminal street gang members;
>
> V. evidence that the individual uses, in more than an incidental manner, criminal street gang dress, hand signals, tattoos, or symbols, including expressions of letters,

numbers, words, or marks, regardless of how or the means by which the symbols are displayed, that are associated with a criminal street gang that operates in an area frequented by the individual;

VI. evidence that the individual has been arrested or taken into custody with known criminal street gang members for an offense or conduct consistent with criminal street gang activity; among other criteria.

VII. evidence that the individual has visited a known criminal street gang member, other than a family member of the individual, while the gang member is confined in or committed to a penal institution; or

VII. evidence of the individual's use of technology, including the Internet, to recruit new criminal street gang members.

*Id.*[2]   Federal, state, and local law enforcement agencies have access to the database.  Am. Compl.

¶ 14.  Once an individual has been designated as a criminal street gang member, the Texas

Department of Public Safety's ("DPS") computerized criminal history records will show that the

individual is considered a gang member by law enforcement.  *Id.*

On information and belief, Plaintiff first alleged that EPPD included him in the

TXGANG database in 2017.  *Id.* ¶ 13.  On or about August 2017, Plaintiff attended another

motorcyclist's funeral at a Catholic church in El Paso, Texas.  *Id.* ¶ 20.  Law enforcement

heavily surveilled the funeral and took almost 4,000 photographs of the funeral's attendees and

motorcycles, despite the fact that the Catholic church and cemetery are not documented areas of

criminal street gang activity.  *Id.* ¶ 21.

After Chief Allen identified Detective Balderrama as the police officer from the EPPD

gang unit who input Plaintiff into the TXGANG database,[3] Defendants also claimed that Plaintiff

---

[2] However, Article 67.054(c) states that "[e]vidence described by Subsections (b)(2)(C)(iv) and (vii) is not sufficient to create the eligibility of a person's information to be included in an intelligence database described by this chapter unless the evidence is combined with information described by another subparagraph of Subsection (b)(2)(C)."  *Id.*

[3] Plaintiff had initially named Detective Balderrama as "John Doe" in his original complaint because he did not know his identity at the time.  Compl. at 1, ECF No. 1.

was input on May 5, 2019. *Id.* ¶ 23. Prior to that date, Plaintiff only visited El Paso on four

occasions in 2019: (1) on April 4th, when he attended court hearings from cases involving

motorcycle club members charged with unlawful possession of a firearm; (2) on April 5th, when

he had a medical procedure at the Veterans Administration hospital; (3) on April 18th, when he

had another medical appointment; and (4) on May 1st, when he participated in the Honor Flight

Escort for the seventh year in a row.[4] *Id.* ¶¶ 23–24. Plaintiff only wore his motorcycle club vest

and identifiers during the Honorary Flight Escort event, but not the others. *Id.*

After hearing that other motorcyclists had been included in the TXGANG database,

Plaintiff contacted DPS on July 14, 2019, and asked if his name was in it. *Id.* ¶ 25. DPS

informed Plaintiff on September 5, 2019, that his information was in fact in the TXGANG

database and that the EPPD had input him into the database. *Id.*

By the instant lawsuit, Plaintiff seeks declaratory relief that Plaintiff's inclusion in

TXGANG database was improper because (1) it violates his right to associate; (2) it attaches a

stigma with legal disabilities (including deterring travel and preventing him from exercising his

Second Amendment rights); (3) Texas Code of Criminal Procedure Article 67.054(b)(2)(C) is

unconstitutionally vague overbroad; and (4) Texas Code of Criminal Procedure Articles 67.202-

.203 violate substantive and procedural Due Process. *Id.* at 1. On August 13, 2020, Detective

---

[4] According to Plaintiff,

> The Honor Flight Escort involved motorcyclists escorting a bus full of World War II and
> Korean War Veterans from Las Cruces to the El Paso Airport, and once they arrived, those
> in the escort unloaded the Veterans' wheelchairs and luggage and saw them off. All local
> motorcycle clubs participated in the honorary escort of these Veterans, including
> [Plaintiff's] club. The escort involved a police escort, beginning with Texas Department
> of Public Safety at the Texas border, which transitioned to the El Paso Police Department
> once the escort entered their territory.

*Id.* ¶ 24.

Balderrama filed the instant motion to dismiss Plaintiff's right-to-associate claims for failure to state a claim.  *See* Mot. at 1.

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet the "facial plausibility" standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).  "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

On a Rule 12(b)(6) motion, the court "must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party."  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotes and citations omitted).  "*Iqbal* does not allow us to question the credibility of the facts pleaded . . . . *Iqbal*, instead, tells us to assume the veracity of well-pleaded factual allegations."  *Ramirez v. Escajeda*, 921 F.3d 497, 501 (5th Cir. 2019) (alteration, internal quotes, and citations omitted).

Finally, in deciding the motion, "a district court may not go outside the complaint." *Gines v. D.R. Horton, Inc*., 699 F.3d 812, 820 (5th Cir. 2012) (internal quotes and citations omitted).  The court may, however, "rely on documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice."  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotes and citations omitted).

## III.   DISCUSSION

Plaintiff asserts that Defendants' conduct violated his First Amendment right to associate because his inclusion in the TXGANG database deters him from publicly advertising his club and membership in it, as well as engaging in its charitable activities.  Resp. in Opp'n at 5–6, ECF No. 27.  He avers that, after Defendants inputted him into the TXGANG database, he has had to: (1) remove his motorcycle club stickers from his four-wheeled automobile; (2) stop attending monthly El Paso Motorcycle Coalition meetings; (3) attend fewer Texas Council of Clubs & Independents (COC&I) meetings and hide his motorcycle vest while en route to them, only donning it at the meeting; (4) stop attending El Paso Bike Nights; and (5) refrain from attending the annual Breast Cancer Awareness run in October 2019 and other charitable and political activities.  Am. Compl. ¶ 44.

By his motion, Detective Balderrama asks the Court to dismiss Plaintiff's right-to-associate claims against him and Chief Allen as Plaintiff failed to state a claim upon which relief can be granted because his claims do not satisfy the injury-in-fact requirement.  Mot. at 6 (citing *Houston Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 618 (5th Cir. 2007).  In particular, Detective Balderrama contends that Plaintiff has failed to show how the stigma of being in the TXGANG database objectively chills his right to associate because the TXGANG

database does not directly regulate, constrain, or compel any action on the part of Plaintiff. *Id.* at 7 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013)).

After due consideration, even when construing the Amended Complaint in his favor, the Court concludes that Plaintiff has failed to plead enough facts to establish that Defendants' conduct violated his right to associate. While Plaintiff has sufficiently pleaded that his charitable and political activities with his motorcycle group are entitled to constitutional protection under the First Amendment, he failed to plead enough facts to establish how his inclusion to the TXGANG database objectively burdens his right to engage in those activities.

**A. Activities Protected by the Right to Associate under the First Amendment.**

The First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). The Supreme Court has recognized two strands of this constitutional right. *Hobbs v. Hawkins*, 968 F.2d 471, 482 (5th Cir. 1992) (citing *Roberts*, 468 U.S. at 617–18). The first strand involves an individual's fundamental personal liberty "to enter into and maintain certain intimate human relationships," such as marriage and family. *Id.* (citing *Roberts*, 468 U.S. at 617–19). In contrast, the second strand involves an individual's associational rights that derive from the First Amendment rights of speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id.*

This second strand of associational rights, also known as "expressive association," is guaranteed by the Constitution "as an indispensable means of preserving other individual liberties." *Id.* (quoting *Roberts*, 468 U.S. at 618). Members of a group who "regularly engage in a variety of civic, charitable, lobbying, fundraising, and other activities" are entitled to constitutional protection. *Roberts*, 468 U.S. 626–27. "An association must merely engage in

-8-

expressive activity that could be impaired in order to be entitled to protection." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000).

Among the kinds of expressive activity protected by the First Amendment include those that are explicitly stated in the amendment: speech, assembly, petition for the redress of grievances, and the exercise of religion. *See Mote v. Walthall*, 902 F.3d 500, 506 (5th Cir. 2018) (citing *Roberts*, 468 U.S. at 618); *IDK, Inc. v. Clark Cty.*, 836 F.2d 1185, 1192 (9th Cir. 1988). Further, "[p]rior authorities [ ] clearly establish that charitable appeals for funds . . . involve a variety of speech interests–communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). "Sponsoring and supporting charitable community events, like the solicitation of funds, 'is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues.'" *Coles v. Carlini*, 162 F. Supp. 3d 380, 394–95 (D.N.J. 2015) (quoting *Schaumburg*, 444 U.S. at 632).

Here, Plaintiff pleaded that he is a member of a motorcycle club that "is involved in community, charitable, and political activities," and that "[t]he stigma of being in the gang database chills [his] right to associate" with it. Am. Compl. ¶¶ 10, 43. Thus, Plaintiff's claim appears to fall within the second strand of associational rights protected by the First Amendment. In comparison to his original complaint, Plaintiff now identifies that some of these community and charitable activities include "routinely helping raise money for Breast Cancer Awareness and escorting Veterans of World War II and the Korean War on Honor Flight escort trips in Texas." *Id.* ¶ 10 n.1. He further pleaded that he has stopped attending Texas COC&I meetings in El Paso, during which he and his fellow club members discuss political and legal issues impacting

the motorcycle club community, as well as promote civil engagement related to such issues, including for example, "pushing for the laws that discourage profiling motorcycle club members." *Id.* . ¶ 11.

Hence, all of Plaintiff's charitable and political activities appear to fall within the protection of the First Amendment. *See, e.g.*, *Coles*, 162 F. Supp. 3d at 395–96 ("A reasonable jury could find that Plaintiff, by wearing Pagan's "colors" and attending a Pagan's-sponsored charity benefit, was engaged in expressive conduct protected by the First Amendment." (citing *Piscottano v. Murphy*, 511 F.3d 247, 274 (2d Cir. 2007)). And thus, the Court concludes that Plaintiff has sufficiently pleaded that his charitable and political activities with his motorcycle group are entitled to constitutional protection under the First Amendment.

Because Plaintiff has sufficiently alleged that his activities with his motorcycle club are constitutionally protected by the First Amendment, the next question to answer is "whether and to what extent [D]efendants' actions burdened" Plaintiff's right to associate." *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007) (citing *Dale*, 530 U.S. at 657– 59). Put another way, whether Plaintiff's allegations, taken as true, show an injury-in-fact to establish Article III standing.

### B. Standing and Injury-In-Fact.

Under Article III of the Constitution, a plaintiff must establish standing to sue to satisfy the "Cases" and "Controversies" requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*

*v. Driehaus*, 573 U.S. 149, 157–58 (2014) (citations omitted) (brackets in original).[5]  "A plaintiff

can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28

U.S.C. § 2201–2202, by establishing 'actual present harm or a significant possibility of future

harm, . . . even though the injury-in-fact has not yet been completed."  *Bauer v. Texas*, 341 F.3d

352, 357–58 (5th Cir. 2003) (internal citations omitted).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and

reviewing courts must accept as true all material allegations of the complaint, and must construe

the complaint in favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

"The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy the injury prong to establish standing, the harm to plaintiff must have already

occurred or it must be likely to occur "imminently."  *Defenders of Wildlife*, 504 U.S. at 560.

"Imminent" means "certainly impending," not just a mere "possible future."  *Clapper*, 568 U.S.

at 409; *see also Bauer*, 341 F.3d at 358 ("[T]o demonstrate that a case or controversy exists to

meet Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief,

a plaintiff must allege facts from which it appears there is a substantial likelihood that he will

suffer injury in the future." (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  "At

the pleading stage, general factual allegations of injury resulting from the defendant's conduct

may suffice, for on a motion to dismiss we presume that general allegations embrace those

specific facts that are necessary to support the claim."  *Defenders of Wildlife*, 504 U.S. at 561

(quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

---

[5] The Court does not reach the requirements of causation and redressability because, in his
Motion, Detective Balderrama only appears to challenge the injury-in-fact requirement in the standing
analysis.

1.  **Injury-In-Fact in the Context of the First Amendment Right to Associate.**

The Supreme Court has "consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular association." *Healy v. James*, 408 U.S. 169, 185–86 (1972). "[G]uilt by association alone, without establishing that an individual's association poses the threat feared by the Government, is an impermissible basis upon which to deny First Amendment rights." *Id.* at 186 (internal quotes and citations omitted). Hence, even a "chilling effect" resulting from a First Amendment violation may constitute a harm to satisfy the injury-in-fact requirement. *Houston Chron. Pub. Co*, 488 F.3d at 618 (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987)). However, a plaintiff cannot satisfy the injury requirement on a First Amendment violation by simply claiming a "chilling effect" alone from a governmental policy that does not regulate, constrain or compel any action on the part of the plaintiff. *Clapper*, 568 U.S. at 418. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Plaintiff concedes that his inclusion in the TXGANG database alone does not "regulate, constrain, or compel any action" that burdens his First Amendment right to associate. Resp. in Opp'n at 5. However, Plaintiff contends that his inclusion in the database must be evaluated in conjunction with Texas Penal Code § 46.02—the unlawful carry statute—and case law that give law enforcement authority to stop and search anyone in the TXGANG database in a more aggressive manner. *Id.* (citing *Arizona v. Johnson*, 555 U.S. 323 (2009)).

Under § 46.02(a-1)(2)(C) of the Texas Penal Code, a person commits an offense if the person: (1) intentionally, knowingly, or recklessly carries on or about his or her person a handgun; (2) in a motor vehicle or watercraft that is owned by the person or under the person's

control; and (3) at any time in which the person is a member of a criminal street gang as defined by § 71.01.  In turn, section 71.01(d) defines a criminal street gang as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities."

Put into context, Plaintiff appears to contend that his inclusion in the database deters him from publicly advertising his club and membership in it, as well as engaging in its charitable activities, because law enforcement will likely stop, arrest, and prosecute him if he carries a firearm in his vehicle, despite his valid license to carry[6], as he is now considered "a member of a criminal street gang member."  But even after construing Plaintiff's Amended Complaint in his favor, the Court agrees with Detective Balderrama that Plaintiff failed to sufficiently allege an objective chilling effect on his right to associate that entails a concrete, particularized, and actual or imminent injury.

### a. *Plaintiff Failed to Allege How Texas Penal Code § 46.02(a-1)(2)(C) and His Inclusion in the TXGANG Database Regulate, Constrain, or Compel Any Action That Burdens His Right to Associate.*

First, Plaintiff failed to sufficiently allege how his inclusion in the TXGANG database, Texas Penal Code § 46.02(a-1)(2)(C), or the interaction between the two, if any, regulates, constrains, or compels any action that burdens his right to associate.  As Detective Balderrama points out and Plaintiff concedes, his inclusion in the TXGANG database alone does not regulate, constrain, or compel any action that burdens Plaintiff's right to associate.  It is not as if Defendants served or intended to serve Plaintiff with an injunction prohibiting association with his motorcycle club upon his inclusion in the TXGANG database.  *See, e.g.*, *McCubbin v. Weber Cty.*, 1:15-CV-132, 2017 WL 3394593, at *10–11 (D. Utah Aug. 7, 2017) (finding that plaintiffs

---

[6] In the Amended Complaint, Plaintiff alleged that he "holds a concealed carry permit" from New Mexico.  Am. Compl. ¶ 29.

sufficiently alleged a credible threat of injury resulting from their inclusion in the gang database, despite their non-membership in a gang, for fear of being served with an injunction prohibiting association with known gang members as the county had done so previously with other people in the database).

Neither does § 46.02(a-1)(2)(C) alone regulate, constrain, or compel any action that burdens Plaintiff's right to associate. On its face, the statute does not "prevent gang members from gathering to engage in any activities protected by the First Amendment[.]" *Ex parte Flores*, 483 S.W.3d 632, 642 (Tex. App. 2015). "Indeed, unlike other statutes, it does not even prevent them from 'associat[ing] in the commission of criminal activities.'" *Id.* (citing Tex. Penal Code Ann. § 71.01(d)). "Rather, [section 46.02(a-1)(2)(C)] prevents people from carrying handguns in their vehicles—an activity that . . . does not convey a particular message—if they also regularly associate in committing criminal activities." *Id.*

As to how § 46.02(a-1)(2)(C) and the TXGANG database interact to constrain his right to associate, Plaintiff appears to allege that his inclusion in the database as "a member of a criminal street gang" penalizes him for exercising his right to associate by criminalizing his ability to carry a firearm in his vehicle despite his valid license to carry. However, recent state court cases addressing this exact issue indicate that this purported criminalization of Plaintiff's ability to carry a firearm in his vehicle lacks legal basis.

While the instant motion was pending, the Texas Court of Appeals in Amarillo decided *Martin v. State*, 07-19-00082-CR, 2020 WL 5790424 (Tex. App. Sept. 28, 2020), in which a defendant appealed his conviction for unlawfully carrying a weapon while "a member of a criminal street gang" under § 46.02(a-1)(2)(C). In that case, a police officer stopped the defendant for a traffic violation while he was riding his motorcycle and wearing a vest with

identifiers from the Cossacks Motorcycle Club.  *Id.* at *1.  The officer asked the defendant whether he had any firearms on him and the defendant answered that he was carrying a pistol inside his vest.  *Id.*  The officer arrested the defendant and asked him whether he was "a Cossack."  *Id.*  After the defendant said yes, the officer then informed the defendant that the Cossacks are considered a criminal street gang.  *Id.*

At trial, to establish that the defendant was "a member of a criminal street gang" under § 46.02(a-1)(2)(C), the prosecution presented the expert testimony of an officer who was part of an anti-gang unit.  This expert witness testified that (1) Cossacks were known to engage in criminal activities, including assaults, threats of violence, intimidation, and illegal firearms possession; (2) law enforcement uses that statewide TXGANG database to identify and track gang members, such as the Cossacks; and (3) he opined that the defendant was "a member of a criminal street gang."  *Id.* at *3.  Specifically, the expert witness explained that he opined that the defendant was a gang member because he had admitted to the arresting officer that he was a Cossack and that he was wearing "gang attire" at the time of his arrest.  *Id.*  Moreover, the expert testified that the defendant had already been twice entered into the TXGANG database: the first time based on his attire and detention with other gang members on a gang-related offense, and the second based on a nonjudicial self-admission and a detention with other gang members on a gang-related offense. *Id.*  However, the expert witness admitted that he knew of no criminal charges filed against Cossacks in the area and also acknowledged that he could not prove the Cossacks' criminal activities, stating, "The only thing I do have is just intelligence."  *Id.*  The jury found the defendant guilty under § 46.02(a-1)(2)(C).  *Id.* at *1.

On appeal, the defendant, who had never been convicted of a felony or misdemeanor, argued that the evidence presented at trial was insufficient to show that he regularly or

continuously engaged in criminal activity pursuant to his membership in a gang and that, consequently, he did not come within the purview of § 46.02(a-1)(2)(C) or § 71.01(d)).

The court agreed with the defendant and acquitted him of the charges.  It held that for a defendant to be "a member of a criminal street gang member" for purposes of § 46.02(a-1)(2)(C), the prosecution must prove that the defendant "must be one of three or more persons with a common identifying sign, symbol, or identifiable leadership *and must also* continuously or regularly associate in the commission of criminal activities." *Id.* at *4 (quoting *Ex parte Flores*, 483 S.W.3d 632, 648 (Tex. App. 2015)) (emphasis in original).  The court believed that while the evidence established the first half of the equation, *i.e.*, the defendant's membership as a Cossack, the record was devoid of evidence of the second half, *i.e.*, a showing that he associated in the commission of criminal activities.  *Id.*  In short, *Martin* provides that mere inclusion in the TXGANG database is not enough to prove that an individual is "a member of a criminal street gang" for him to be convicted under § 46.02(a-1)(2)(C).

The same court also decided *Becker v. State*, 07-19-00286-CR, 2020 WL 4873870, (Tex. App. Aug. 19, 2020), while the instant motion was pending.  As in *Martin*, the defendant in *Becker* was also riding his motorcycle and wearing a vest with identifiers of a motorcycle club, the Bandidos, which is considered a criminal street gang.  *Id.* at *2.  A police officer stopped the defendant and another motorcyclist for traffic violations.  *Id.* at *1.  Upon approaching the motorcyclists, the officer spoke with the defendant, who handed him a valid Texas driver's license and a valid Texas license to carry.  *Id.* at *2.  After the officer saw the license to carry, he asked the defendant whether he was in possession of a handgun.  *Id.*  The defendant told the officer that he did have a handgun on his hip.  *Id.*

The defendant filed a pretrial writ of habeas corpus challenging the constitutionality of §
46.02(a-1)(2)(C) as it applied to him.  *Id.* at *1.  The trial court denied the writ and the defendant
appealed.  *Id.*  His arguments in his pretrial writ were somewhat similar to Plaintiff's claims in
the instant case, including: (1) that "[u]nder Section 46.02(a-1)(2)(C) . . . the police may arrest
any handgun licensee whenever the police consider that licensee to be a member of a 'criminal
street gang'"; (2) that "[t]he statutes permit police to arrest law-abiding handgun licensees under
the condemned rationale of guilt by association, a basis of discrimination forbidden by both the
First and Fourteenth Amendments"; (3) that "[b]y subjecting all handgun licensees like
Appellant to arrest and prosecution, Texas law deprives them of their First and Fourteenth
Amendment liberties . . . includ[ing] the right to freely associate, to freely express that
association and to freely travel – and to exercise these freedoms at the same time"; (4) that
"[h]andgun licensees like [the defendant] also have a Second Amendment right to carry their
handgun for defensive purposes"; and (5) that "[t]he source of this constitutional conflagration is
found in the statute's plain language explicitly authorizing police to disarm and arrest any
handgun licensee if it considers the person to be a member of a 'criminal street gang.'" *Id.* at *2.

The court dismissed the appeal because it found that certain facts not yet clarified or
established in the record left the defendant's as-applied challenge not yet ripe for consideration.
*Id.* at *4.  Specifically, the court explained that another provision within the same chapter as §
46.02, section 46.15(b)(6), expressly provides that "[s]ection 46.02 does not apply to a person
who . . . is carrying . . . [both] . . . a license issued under subchapter H, Chapter 411, Government
Code, to carry a handgun . . . and . . . a handgun . . . in a concealed manner . . . or . . . in a
shoulder or belt holster." *Id.* at *3 (quoting Tex. Penal Code § 46.15(b)(6)).  Thus, §
46.15(b)(6)'s relevance to the defendant's constitutional challenge depended on whether the

factual circumstances attendant to his arrest satisfied the elements of § 46.15(b)(6). *Id.* at *4. But since the parties had only stipulated that the defendant had a valid license to carry and that he carried a handgun on his hip, the record still needed clarification on whether the defendant's handgun was concealed or in a shoulder or belt holster on his hip. *Id.* at *4.

In short, *Becker* provides that "[i]f § 46.15(b)(6) means what it says, *[then "a member of a criminal street gang"] having a license to carry may well remove him from the teeth of § 46.02(a-1)*." *Id.* at *3 (emphasis added). While the *Becker* court could not interpret § 46.15(b)(6)'s meaning because of ripeness issues in that case, the Court has no such limitations here. Thus, the Court now construes § 46.15(b)(6) in due course.

The task of determining the meaning of a statute begins where all such inquiries must begin: with the language of the statute itself. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). "Under the rules of statutory construction, a court must give effect to the legislature's intent as evident in the express and unambiguous words of a statute, and it may not go beyond the statute's plain meaning when the terms are clear." *Provident Life and Acc. Ins. Co. v. Cleveland*, 460 F. App'x. 359, 361 (5th Cir. 2012) (citing *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n. 4 (Tex. 2006)). "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

Here, the Court is of the view that the language of § 46.15(b)(6) is clear and unambiguous: "[s]ection 46.02 does not apply to a person who . . . is carrying . . . [both] . . . a license issued under subchapter H, Chapter 411, Government Code, to carry a handgun . . . and .

. . a handgun . . . in a concealed manner . . . or . . . in a shoulder or belt holster." Tex. Penal Code § 46.15(b)(6).  In other words, § 46.15(b)(6) acts as a statutory exception to § 46.02 *as a whole*. It logically follows then that as long as "a member of a criminal street gang" (as defined by § 71.01(d)) satisfies all the requirements in § 46.15(b)(6), then that individual *cannot* be prosecuted and convicted under § 46.02(a-1)(2)(C).  Such interpretation is consistent with the plain meaning of the statute.  In fact, Detective Balderrama expressly agreed with such interpretation in his filings: "The law is clear . . . . If the Plaintiff has a valid license to carry issued under Subchapter H, Chapter 411, of the Texas Gov't Code and carries his handgun, concealed or in a shoulder or belt holster, *the unlawful carry statute does not apply to him*." Suppl. Reply at 5, ECF No. 37 (emphasis added).

Moreover, applying the plain meaning of § 46.15(b)(6) does not lead to absurd results. *See Turkette*, 452 U.S. at 580 ("[A]uthoritative administrative constructions should be given the deference to which they are entitled, absurd results are to be avoided and internal inconsistencies in the statute must be dealt with." (quoting *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643 (1978)).  Indeed, absurd results certainly follow if § 46.15(b)(6) applies as a statutory exception to the rest of § 46.02 but not § 46.02(a-1)(2)(C), as the prosecution argued in *Becker*.  As Chief Justice Brian Quinn eloquently noted in *Becker*:

> What if the State licensed that supposed "criminal street gang" member to carry the firearm? In so licensing the person, logic suggests that it approved of his carrying the weapon. Though not a criminal for purposes of securing a license, the person apparently becomes one simply by sitting in his own car or boat with the item he was licensed to carry.

*Becker*, 2020 WL 4873870, at *1.

Hence, *Martin, Becker,* and § 46.15(b)(6) make clear that the interaction between § 46.02(a-1)(2)(C) and Plaintiff's inclusion in the TXGANG database does not criminalize his

ability to carry a firearm in his vehicle, and thus, they do not constrain his right to associate as he

alleges.  To begin, *Martin* invalidates Plaintiff's fear of prosecution under § 46.02(a-1)(2)(C)

upon his mere inclusion in the TXGANG database.  What is more, the plain meaning of §

46.15(b)(6) further invalidates Plaintiff's fear of prosecution under § 46.02(a-1)(2)(C) because,

taking his allegations as true, Plaintiff's valid license to carry[7] "remove[s] him from the teeth of

§ 46.02(a-1)(2)(C)".  *Becker*, 2020 WL 4873870, at *3.  Simply put, even when construing

Plaintiff's Amended Complaint in his favor, the interaction between § 46.02(a-1)(2)(C) and his

inclusion in the TXGANG database does not regulate, constrain, or compel any action that

burdens Plaintiff's right to associate.

### b. Even When Construing His Allegations in His Favor, Plaintiff's Claimed Injury is Still Speculative and Hypothetical.

Second, even when presuming that Plaintiff's general allegations embrace those specific

facts necessary to support his claim that his inclusion in the database burden his right to

associate, Plaintiff's claimed injury is still speculative and hypothetical at best.  Particularly

instructive here is *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  In that case, the plaintiff

brought a civil rights action against the City of Los Angeles seeking, among other things,

injunctive and declaratory relief to prevent the police from using illegal chokeholds in routine

traffic stops.  *Id.*  at 97–98.  The plaintiff was stopped by police for a traffic violation, but

---

[7] To date, New Mexico and Texas have an agreement reciprocating each other's concealed handgun licenses issued to their respective residents.  Mem. of Agreement Between the State of Texas and the State of New Mexico Concerning Concealed Handgun License Reciprocity (June 22, 2012), https://www.dps.texas.gov/rsd/LTC/legal/reciprocity/newmexicorecip.pdf.

Ultimately, such agreement means that any license to carry that New Mexico issues under its applicable law—*i.e.*, Chapter 29, Article 19 of the New Mexico Statutes Annotated—is recognized in Texas as if it were issued in that state under its own applicable law—*i.e.*, Chapter 411, Subchapter H, of the Texas Government Code.  The agreement also applies the other way around.  Hence, Plaintiff's valid license to carry from New Mexico would satisfy § 46.15(b)(6)'s requirement that the license be issued "under subchapter H, Chapter 411, Government Code".

"without provocation or justification, [the police] seized [him] and applied a 'chokehold'—either

the 'bar arm control' hold or the 'carotid-artery control' hold or both—rendering him

unconscious and causing damage to his larynx." *Id.*  The Supreme Court held that the plaintiff

did not have standing to seek prospective injunctive relief because the threat of future injury was

attenuated:

> That Lyons may have been illegally choked by the police on October 6, 1976, while
> presumably affording Lyons standing to claim damages against the individual
> officers and perhaps against the City, does nothing to establish a real and immediate
> threat that he would again be stopped for a traffic violation, or for any other offense,
> by an officer or officers who would illegally choke him into unconsciousness
> without any provocation or resistance on his part. The additional allegation in the
> complaint that the police in Los Angeles routinely apply chokeholds in situations
> where they are not threatened by the use of deadly force falls far short of the
> allegations that would be necessary to establish a case or controversy between these
> parties.
>
> In order to establish an actual controversy in this case, Lyons would have had not
> only to allege that he would have another encounter with the police but also to make
> the incredible assertion either, (1) that all police officers in Los Angeles always
> choke any citizen with whom they happen to have an encounter, whether for the
> purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered
> or authorized police officers to act in such manner.

*Id.* at 105.  In other words, the plaintiff had no reasonable basis to assert how the claimed

probabilistic injury would occur in the future.

Here, even when drawing all inferences in his favor, Plaintiff's claimed threat of future

injury is in fact more attenuated than that of the plaintiff in *Lyons*.  To begin, Plaintiff "has never

been pulled over for a traffic offense or arrested."  Reply at 5 (citing Am. Compl. ¶¶ 12, 24),

ECF No. 30.  To be sure, "it is not necessary that [Plaintiff] first expose himself to actual arrest

or prosecution to be entitled to challenge a statute that he claims deters the exercise of his

constitutional rights."  *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).  But while Plaintiff argues

that *Becker* and *Martin* serve to establish that law enforcement, under similar circumstances,

have previously arrested and charged individuals listed in the TXGANG database under §

46.02(a-1)(2)(C), the defendants' circumstances in those cases differ substantially from those

present here.  Suppl. Resp. in Opp'n at 6, ECF No. 36.  For example, in *Martin*, the defendant

did not have a valid license to carry such as the one that Plaintiff possesses.  On the other hand,

in *Becker*, the record was unclear on whether the defendant, who did possess a valid license to

carry, was carrying his handgun pursuant to the requirements set forth in § 46.15(b)(6)—namely,

whether he was carrying his handgun in a concealed manner or in a shoulder or belt holster.

Since Plaintiff possesses a license to carry, *assuming* that he even meets the definition of "a

member of a criminal street gang", he only needs to follow the requirements set forth in §

46.15(b)(6) to prevent his claimed future injury from possibly materializing.  *See, e.g.*, *Clapper*,

568 U.S. at 410 (finding that plaintiffs failed to establish an injury-in-fact as it was speculative

whether the Government would imminently target their communications because the statute at

issue expressly provided that plaintiffs, who are U.S. citizens, could not be targeted for

surveillance under that statute).

Further, even when construing the Amended Complaint in his favor, none of Plaintiff's

allegations suggest that he is under an imminent or certainly impending threat of being stopped

and arrested for either a traffic violation, or, as explained above, for unlawfully carrying a

firearm in violation of § 46.02(a-1)(2)(C).  Like in *Lyons*, Plaintiff here would first have to

violate the law as he enters El Paso before his claimed injury could even *possibly* materialize.

Particularly telling is the mere fact that the Court must weigh the numerous existing possibilities

by considering a wide array of scenarios with varying factual circumstances in order to

determine whether Plaintiff will be imminently stopped upon entering El Paso.  It is not as if the

police will certainly stop and interact with Plaintiff because he must go through a checkpoint

every time he travels to El Paso.  *See, e.g.*, *Cherri v. Mueller*, 951 F. Supp. 2d 918, 929 (E.D.

Mich. 2013) (finding that plaintiffs sufficiently pleaded a real and immediate threat to their right

to associate because they alleged that they would be stopped at the border and questioned about

their religious practices and beliefs after they had experienced such treatment at the border

multiple times on a consistent basis after attending a Muslim conference).

        And finally, Plaintiff cannot manufacture a concrete and particularized injury by merely

alleging that he (1) avoids travel into Texas when possible; (2) removed motorcycle club stickers

from his four-wheeled automobile; (3) stopped attending monthly El Paso Motorcycle Coalition

meetings in his club vest; (4) attends fewer Texas COC&I meetings and hides his motorcycle

vest while en route; (5) stopped attending El Paso Bike Nights; and (6) refrained from attending

a variety of charitable and political events in El Paso that he had attended in the past.  As the

Supreme Court clearly held in *Clapper*:

> [R]espondents cannot manufacture standing merely by inflicting harm on
> themselves based on their fears of hypothetical future harm that is not certainly
> impending.  Any ongoing injuries that respondents are suffering are not fairly
> traceable to [the statute they claim causes them injury].  If the law were otherwise,
> an enterprising plaintiff would be able to secure a lower standard for Article III
> standing simply by making an expenditure based on a nonparanoid fear.

*Clapper*, 568 U.S. at 1151.

        Therefore, even when viewing all facts and inferences in the light most favorable to him,

Plaintiff still fails to sufficiently allege how his injury is imminent or certainly impending for it

to establish Article III standing.  The Court dismisses Plaintiff's right-to-associate claim against

Defendants with leave to amend.

### C.  Revisiting the Court's Previous Ruling In Light of *Becker*, *Martin*, and Tex. Penal Code § 46.15(b)(6).

        Lastly, in view of the ruling in this Order based on the recently decided cases of *Becker*

and *Martin*, as well as Texas Penal Code § 46.15(b)(6),  the Court hereby notifies the parties of

its intention to revisit its previous ruling in its "Memorandum Opinion and Order" (ECF No. 8).

Specifically, the Court wishes to revisit its conclusion that Plaintiff sufficiently alleged the

existence of an injury and a ripe actual controversy resulting from his inclusion in the TXGANG

database.  Mem. Op. and Order at 19, 20, ECF No. 8.  In ruling as such, the Court relied on the

findings that Plaintiff's allegations appeared to have sufficiently established that his inclusion in

the TXGANG database (1) "carrie[d] with it 'a change of legal status' where [Plaintiff] cannot

legally carry a firearm in his vehicle . . . , which he could otherwise legally do in the past", *id.* at

18, ECF No. 8; and (2) presented Plaintiff with "a credible threat of prosecution" under the

Texas unlawful carry statute, Tex. Penal Code § 46.02 (a-1)(2)(C), despite his concealed carry

permit, *id.* at 21.  In light of the intervening changes in controlling law, the Court is of the view

that the ruling in its Memorandum Opinion and Order may have ceased to be viable.  In view

thereof, the Court now orders the parties to brief such issue.

**Chief Allen and Detective Balderrama shall jointly** include all of their relevant

arguments supporting their position on such issue in an initial brief, which they must style as a

motion for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure.[8]  **Plaintiff**

**shall** respond to the Defendants' arguments and include his own to support his position in a

responsive brief.  After Plaintiff files his responsive brief, **Defendants** may file a reply refuting

the arguments in Plaintiff's responsive brief.

**The parties must cite to a Fifth Circuit opinion, and if none, to any other federal or**

**state court decision and other authorities that are relevant to the issue and support their**

---

[8] Under Rule 54(b), the Court has discretion to revise its orders prior to entry of final judgment.
*See* Fed. Civ. Pro. 54(b) ("Any order which . . . adjudicates fewer than all the claims or rights or liabilities
of fewer than all the parties . . . is subject to revision at any time before the entry of [final] judgment.");
*see also Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 208 F. Supp. 2d 687, 688 (S.D. Tex.
2001).

**respective position on the same.** To the extent a party wishes to cite to a Supreme Court opinion, it must also cite to a lower court decision that interprets the relevant portion of the Supreme Court opinion in the same manner as the party does or applies to <u>similar facts</u> as in this case on which the issue turns. **Mere attorney argument without citations to the above-mentioned authorities will not satisfy the party's duty to comply with this Order**.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Francisco Balderrama's "Rule 12 (b)(6) Motion to Dismiss Plaintiff's First Amendment Claims in his First Amended Complaint" (ECF No. 27) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff William Apodaca-Fisk **SHALL** have leave to amend his Complaint to cure the pleading deficiencies noted herein.

**IT IS FURTHER ORDERED** that Defendants Greg Allen and Francisco Balderrama **SHALL FILE by January 11, 2021[9],** an initial brief consistent with the instructions and orders mentioned elsewhere in this Order.

**IT IS MOREOVER ORDERED** that Plaintiff William Apodaca-Fisk **SHALL FILE** a responsive brief, consistent with the instructions and orders mentioned elsewhere in this Order, **fourteen (14) days** after Defendants file their initial brief.

**IT IS FINALLY ORDERED** that Defendants Greg Allen and Francisco Balderrama **SHALL HAVE LEAVE** to file a reply, consistent with the instructions and orders mentioned elsewhere in this Order, **seven (7) days** after Plaintiff William Apodaca-Fisk files his responsive brief.

---

[9] The Court affords Defendants additional time because of the upcoming holiday season.

So ORDERED and SIGNED this 21st day of December 2020.

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**