# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| **WILLIAM APODACA-FISK**, § | |
| § | |
| *Plaintiff*, § | |
| v. § | |
| § | |
| **GREG ALLEN**, *in his official capacity as* § | **EP-19-CV-00259-DCG** |
| *Chief of the El Paso Police Department* **and** § | |
| **FRANCISCO BALDERRAMA**, *an El* § | |
| *Paso Police Department Officer in his* § | |
| *individual capacity*, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM ORDER

Presently pending before the Court is Defendants Chief Greg Allen and Officer Francisco Balderrama's (collectively, "Defendants") "Joint Motion for Reconsideration and Brief in Support" (ECF No. 40) ("Motion") filed on January 11, 2021. Therein, Defendants ask the Court to reconsider, under Federal Rule of Civil Procedure 54(b), the conclusions in its "Memorandum Opinion and Order" (ECF No. 8) that Plaintiff William Apodaca-Fisk's ("Plaintiff") sufficiently alleged the existence of an injury and a ripe actual controversy, and to dismiss Plaintiff's remaining claims against them. Mot. at 1, ECF No. 40. To date, Plaintiff failed to file a responsive filing by the appropriate deadline, so the Court construes the motion as unopposed.[1] For the reasons that follow, the Court **GRANTS** Defendants' motion.

### I.   BACKGROUND

A thorough recitation of Plaintiff's allegations in his original and amended complaints can be found in the Court's December 21, 2019 Memorandum Opinion and Order. *See* Mem.

---

[1] *See* W.D. Tex. Local R. CV-7(e) (providing that if no responsive filing is filed within the time period prescribed, the Court may grant the pending motion as unopposed).

Op. and Order at 1–6, ECF No. 38 [hereinafter "December 21st Order"].  In short, Plaintiff claims that his alleged improper inclusion as a "criminal street gang member" in the TXGANG database[2] by Defendants injures him by: (1) violating his right to associate under the First Amendment; and (2) attaching a stigma with legal disabilities (including deterring travel and preventing him from exercising his Second Amendment rights) under the Fourteenth Amendment's Due Process Clause.  Compl. at 1, ECF No. 1; Am. Compl. at 1, ECF No. 16.

On October 14, 2019, Defendants filed a motion to dismiss for failure to state a claim.  *See* Mot. to Dismiss, ECF No. 6.  On January 13, 2020, the Court granted in part, denied in part Defendants' motion to dismiss.  Mem. Op. and Order at 1.  While it ruled that Plaintiff had failed to sufficiently allege an injury on his First Amendment claims, the Court ruled that Plaintiff had sufficiently alleged the existence of an injury and a ripe actual controversy on his "stigma-plus" claims under the Due Process Clause.  *Id.* at 10–11.  In ruling as such, the Court relied on the findings that Plaintiff's allegations appeared to have sufficiently established that his inclusion in the TXGANG database (1) "carrie[d] with it 'a change of legal status' where [Plaintiff] cannot legally carry a firearm in his vehicle . . . , which he could otherwise legally do in the past", *id.* at 18, ECF No. 8; and (2) presented Plaintiff with "a credible threat of prosecution" under the

---

[2] The TXGANG database is a statewide repository of records related to criminal street gangs and gang members.   Article 67.054 of the Texas Code of Criminal Procedure sets forth the submission criteria that Texas law enforcement uses to determine who can be classified as a criminal street gang member in the database.  *See* Tex. Code Crim. Proc. Ann. art. 67.054 (Vernon 2019).

unlawful carry statute, Texas Penal Code § 46.02 (a-1)(2)(C)[3], despite his concealed carry permit[4], *id.* at 21.

After Plaintiff filed his amended complaint to cure his First Amendment claims on May 26, 2020, Defendant Balderrama moved to dismiss Plaintiff's amended First Amendment claims again for lack of injury on October 13, 2020.  *See* Def. Balderrama's Mot. to Dismiss, ECF No. 27.  On December 21, 2020, the Court granted the motion and dismissed Plaintiff's First Amendment claims after finding that Plaintiff failed to plead sufficient facts to establish how his inclusion in the TXGANG database objectively burdened his right to associate.  Dec. 21st Order at 8.  Specifically, the Court found that, considering the recent relevant rulings of the Texas Court of Appeals in Amarillo in *Becker v. State,* 07-19-00286-CR, 2020 WL 4873870, (Tex. App. Aug. 19, 2020), and *Martin v. State*, 07-19-00082-CR, 2020 WL 5790424 (Tex. App. Sept. 28, 2020), Plaintiff had failed to allege how Texas Penal Code § 46.02(a-1)(2)(C) and his inclusion in the TXGANG database regulate, constrain, or compel any action that burdens his right to associate (in part because he failed to establish a credible fear of prosecution), *id.* at 12–20, and that even when construing Plaintiff's allegations in his favor, his claimed injury was still speculative and hypothetical, *id.* at 20–23.

In view of such ruling, the Court notified the parties of its intention to revisit its previous ruling in its Memorandum Opinion and Order issued on January 13, 2020.  *See* Dec. 21st Order

---

[3] Under § 46.02(a-1)(2)(C) of the Texas Penal Code, a person commits an offense if the person: (1) intentionally, knowingly, or recklessly carries on or about his or her person a handgun; (2) in a motor vehicle or watercraft that is owned by the person or under the person's control; and (3) at any time in which the person is a member of a criminal street gang as defined by § 71.01.  In turn, section 71.01(d) defines a criminal street gang as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities."

[4] In his original and amended complaints, Plaintiff claims to hold a concealed carry permit from New Mexico.  Compl. ¶ 35; Am. Compl. ¶ 29.

at 23–25. In particular, the Court stated that it wished to revisit its conclusions that Plaintiff sufficiently alleged the existence of an injury and a ripe actual controversy resulting from his inclusion in the TXGANG database because such conclusion may no longer be viable in light of *Martin* and *Becker*. *Id.* Accordingly, the Court ordered Defendants to file their initial brief by January 11, 2021, and further ordered Plaintiff to file a responsive brief "**fourteen (14) days**" after Defendants filed their initial brief. *Id.* at 25 (bold in original).

On January 11, 2021, Defendants filed the instant motion in compliance with the Court's December 21st Order. On January 25, 2021, the deadline for Plaintiff to timely file his responsive brief in compliance with the Court's December 21st Order expired. On February 5, 2021, the Court ordered Plaintiff to show cause in writing by February 10, 2021, as to why he failed to file his responsive brief in compliance with the Court's December 21st Order. Order to Show Cause at 3, ECF No. 44. The Court also ordered Plaintiff to file his responsive brief by that same date. *Id.* The Court also expressly warned Plaintiff "**THAT FURTHER FAILURE COMPLY WITH THE COURT'S ORDERS, INCLUDING THIS ONE, MAY RESULT IN SANCTIONS AND DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS.**" *Id.* (bold in original). Nearly a week has passed since the Court issued its show cause order and Plaintiff has yet to file both his explanation as to why he failed to comply with the Court's December 21st Order and his responsive brief.

## II. STANDARD

While the Federal Rules of Civil Procedure do not formally recognize the existence of motions for reconsideration, *St. Paul Mercury Ins. Co. v. Fair Grounds Co.*, 123 F.3d 336, 339 (5th Cir. 1997), courts customarily consider such motions under Rules 54(b), 59(e), or 60(b), depending on the circumstances. *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 481

(N.D. Tex. 2016).  Because Defendants move for the Court to reconsider an interlocutory order, their motion is controlled by Rule 54(b).  *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).  Specifically, Rule 54(b) provides in relevant part that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, "whether to grant . . . a motion to reconsider rests within the discretion of the court." *Israely*, 180 F. Supp. 3d at 481 (quoting *Dos Santos v. Bell Helicopter Textron, Inc. District*, 651 F.Supp.2d 550, 553 (N.D. Tex. 2009)).  The standard for evaluating motions to reconsider under Rule 54(b) "would appear to be less exacting than that imposed by Rules 59 and 60," but courts still consider the factors that inform the analysis under motions filed under those rules.  *Id.* (quoting *Dos Santos*, 651 F. Supp. 2d at 553).  These factors include (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; (4) counsel engaged in serious misconduct; and (5) an intervening change in law alters the appropriate outcome.  *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475–76 (M.D. La. 2002).  Similarly, motions filed under Rule 54(b) are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004), or to support old arguments that are merely reconfigured, *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316, n.18 (S.D. Tex. 1994).

However, the Fifth Circuit has made clear that analysis under Rule 54(b) is different in that its "approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Austin*, 864 F.3d at 336 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). Such approach is centered on the rationale that "although courts are concerned with principles of finality and judicial economy, the ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Adams v. United Ass'n. of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. of the U.S. and Canada, AFL-CIO, Loc. 198*, --- F. Supp. 3d ---, CV 98-400-JWD-RLB, 2020 WL 6074627, at *2 (M.D. La. Oct. 15, 2020) (internal quotations omitted).

### III.   DISCUSSION

By their motion, Defendants ask the Court to reconsider its conclusion that Plaintiff sufficiently alleged the existence of an injury and a ripe actual controversy resulting from his inclusion in the TXGANG database as a "criminal street gang member". Mot. at 2–3 (quoting Mem. Op. and Order at 21). Defendants contend the Court's conclusion then "was based on information not yet available" because the Texas Court of Appeals just recently issued its relevant opinions on *Becker* and *Martin*. Mot. at 3. Defendants argue that these two state court cases have resulted in intervening changes in the controlling case law related to the prosecution of individuals under Texas Penal Code § 46.02(a-1)(2)(C), and that in light of such changes, contrary to Plaintiff's allegations in his original and amended complaints, Plaintiff no longer suffers a credible threat of prosecution under the statute. *Id.* Hence, Defendants aver that the Court must dismiss Plaintiff's lawsuit because it is not ripe for declaratory judgment as it does not sufficiently allege an injury and present an actual controversy. *Id.*

After due consideration, the Court agrees with Defendants that *Martin* and *Becker* have resulted in intervening changes in the controlling case law related to the prosecution of individuals under § 46.02(a-1)(2)(C), and that in light of such changes, Plaintiff no longer suffers a credible threat of prosecution under the statute. The Court first reconsiders its conclusion that Plaintiff sufficiently alleged an injury-in-fact and then reconsiders its conclusion that he sufficiently alleged a ripe actual controversy.

**A. Injury.**

As the Court noted in its Memorandum Opinion and Order, under Article III of the Constitution, a plaintiff must establish standing to sue to satisfy the "Cases" and "Controversies" requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood] that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (citations omitted) (brackets in original). "A plaintiff can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201–2202, by establishing 'actual present harm or a significant possibility of future harm, . . . even though the injury-in-fact has not yet been completed." *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003) (internal citations omitted).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy the injury prong to establish standing, the harm to plaintiff must have already occurred or it must be likely to occur "imminently." *Defenders of Wildlife*, 504 U.S. at 560. "Imminent" means "certainly impending," not just a mere "possible future." *Clapper*, 568 U.S. at 409; *see also Bauer*, 341 F.3d at 358 ("[T]o demonstrate that a case or controversy exists to meet Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

In its Memorandum Opinion and Order, the Court concluded that Plaintiff sufficiently alleged the existence of an injury resulting from his inclusion in the TXGANG database. Mem. Op. and Order at 18–19. In particular, the Court concluded, after drawing all inferences in favor of Plaintiff, that it appeared that "individuals who have met the two criteria in Article 67.054 and are inputted to the TXGANG database . . . can be arrested [under § 46.02 (a-1)(2)(C)] for a period of at least five years". *Id.* at 18. Hence, the Court concluded that despite his concealed carry permit, Plaintiff had sufficiently alleged "'a change of legal status' where he cannot legally carry a firearm in his vehicle . . . , which he could otherwise legally do in the past" and thus, presented him with a "credible threat of prosecution." *Id.* at 18–19.

However, while the instant case was pending, the Texas Court of Appeals decided *Martin* and *Becker*. *Martin* provides that mere inclusion in the TXGANG database is not enough for the prosecution to prove that an individual is "a member of a criminal street gang" for him to be

convicted under § 46.02(a-1)(2)(C). Dec. 21st Order at 16 (citing *Martin*, 2020 WL 5790424 at *4). On the other hand, *Becker* mentions *in dicta* that the plain language in Texas Penal Code § 46.15(b)(6), which expressly provides that "[s]ection 46.02 does not apply to a person who . . . is carrying . . . [both] . . . a license issued under subchapter H, Chapter 411, Government Code, to carry a handgun . . . and . . . a handgun . . . in a concealed manner . . . or . . . in a shoulder or belt holster," could potentially act as a statutory exception to § 46.02 *as a whole*. *Becker*, 2020 WL 4873870, at *3 (quoting Tex. Penal Code § 46.15(b)(6)). In other words, while the State may prove that an individual is "a member of a criminal street gang", if that individual satisfies all the requirements in § 46.15(b)(6), then he *cannot* be prosecuted and convicted under § 46.02(a-1)(2)(C). While the *Becker* court could not interpret § 46.15(b)(6)'s meaning because of ripeness issues in that case, the Court had no such limitations at the time of its December 21st Order. Dec. 21st Order at 18. Accordingly, the Court concluded that the language of § 46.15(b)(6) is clear and unambiguous and construed its language to provide a statutory exception to § 46.02 *as a whole*. *Id.* at 18–19.

As such, as the Court noted in its December 21st Order, "*Martin, Becker,* and § 46.15(b)(6) make clear that the interaction between § 46.02(a-1)(2)(C) and Plaintiff's inclusion in the TXGANG database does not criminalize his ability to carry a firearm in his vehicle." Dec. 21st Order at 19–20. First, "*Martin* invalidates Plaintiff's fear of prosecution under § 46.02(a-1)(2)(C) upon his mere inclusion in the TXGANG database." *Id.* at 20. And second, "the plain meaning of § 46.15(b)(6) further invalidates Plaintiff's fear of prosecution under § 46.02(a-1)(2)(C) because, taking his allegations as true, Plaintiff's valid license to carry[5] 'remove[s] him

---

[5] To date, New Mexico and Texas have an agreement reciprocating each other's concealed handgun licenses issued to their respective residents. Mem. of Agreement Between the State of Texas and the State of New Mexico Concerning Concealed Handgun License Reciprocity (June 22, 2012), https://www.dps.texas.gov/rsd/LTC/legal/reciprocity/newmexicorecip.pdf.

from the teeth of § 46.02(a-1)(2)(C)'". *Id.* (quoting *Becker*, 2020 WL 4873870, at *3). Therefore, in light of the intervening changes in law mentioned above, even when construing his allegations in his favor, Plaintiff's allegations now fail to sufficiently allege an injury in the form of a "change of legal status" in that he cannot legally carry a firearm in his vehicle, which he could otherwise do in the past, because his allegations fail to establish "a credible threat of prosecution" under § 46.02 (a-1)(2)(C).

### B. Actual Controversy.

As the Court noted in its Memorandum Opinion and Order, a declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). "The 'actual controversy' required under 28 U.S.C. § 2201(a) 'is identical to the meaning of 'case or controversy' for the purposes of Article III.'" *Bauer*, 341 F.3d at 358 (quoting *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997)) "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" *Wolfe*, 212 F.3d at 896 (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). A plaintiff can establish an "actual controversy" by demonstrating 'actual present harm or a significant possibility of future harm, . . . even though the injury-in-fact has not yet been completed." *Bauer*, 341 F.3d at 357–58 (internal citations omitted).

---

Ultimately, such agreement means that any license to carry that New Mexico issues under its applicable law—*i.e.*, Chapter 29, Article 19 of the New Mexico Statutes Annotated—is recognized in Texas as if it were issued in that state under its own applicable law—*i.e.*, Chapter 411, Subchapter H, of the Texas Government Code. The agreement also applies the other way around. Hence, Plaintiff's valid license to carry from New Mexico would satisfy § 46.15(b)(6)'s requirement that the license be issued "under subchapter H, Chapter 411, Government Code".

"An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) (quoting *Susan B. Anthony List.*, 573 U.S. at 158). "But where a plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest . . . and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)) (internal quotes omitted). Requiring that a plaintiff must break the law to test its constitutionality is to risk punishing him for conduct that he may have honestly thought was constitutionally protected. *Intl. Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821 (5th Cir. 1979). "Not only is this *prima facie* unfair, but it discourages people from engaging in protected activity and enforcing constitutional rights." *Id.*

In its Memorandum Opinion and Order, after construing Plaintiff's allegations in his favor, the Court concluded that his "stigma-plus" claim presented an actual controversy because his allegations sufficiently establish that there is a substantial risk that harm or future injury will occur. Mem. Op. and Order at 20. In particular, the Court found that Plaintiff pleaded enough facts demonstrating that (1) he intended to exercise his Second Amendment right to carry a firearm in his vehicle for self-defense during his trips to El Paso; and (2) he faced a credible threat of prosecution under § 46.02 (a-1)(2)(C) for doing so. *Id.* Notably, the Court found that Plaintiff's allegations demonstrated that § 46.02 (a-1)(2)(C) "is not a mere paper tiger but has a real history of enforcement" *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018), *as revised* (Aug. 9, 2018), in part because Defendants had never asserted or argued that they would not arrest Plaintiff for unlawful carry despite his concealed carry permit. *Id.* at 21; *see also Seals*, 898 F.3d

at 592 ("Whether the government disavows prosecution is a factor in finding a credible threat of prosecution."); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) ("The Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do."); *Babbitt*, 442 U.S. at 302 ("[T]he State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices.  Appellees are thus not without some reason in fearing prosecution[.]").

However, in view of the intervening changes in controlling law, the Court agrees with Defendants that these conclusions have now ceased to be viable.  First, as noted above, Plaintiff's allegations do not sufficiently establish "a credible fear of prosecution" under § 46.02 (a-1)(2)(C) because his own allegations provide that he can easily satisfy the requirements in § 46.15(b)(6) and remove himself "from the teeth of § 46.02(a-1)(2)(C)".  Dec. 21st Order at 20 (quoting *Becker*, 2020 WL 4873870, at *3).  And second, Defendants are now also explicitly disavowing prosecution against Plaintiff as long as he satisfies the requirements in § 46.15(b)(6):

> [I]f the Plaintiff has a license to carry issued under Subchapter H, Chapter 411, of the Texas Gov't Code and the handgun is concealed or in a shoulder or belt holster, §46.02 would not apply to him. The inclusion of the Plaintiff in TXGANG alone would not subject him to arrest for possessing a firearm.
>
> . . .
>
> Pursuant to *Becker* and *Martin*, the Plaintiff has at least two avenues to avoid prosecution for unlawful carry without being compelled to hide his association with his club. First, [t]he Plaintiff can have a valid license to carry issued under Subchapter H, Chapter 411, of the Texas Gov't Code and carry the handgun, concealed or in a shoulder or belt holster. *See* Tex. Gov't Code §46.15(b)(6). As stated by the Plaintiff, he has a valid license to carry, which "remove[s] him from the teeth of §46.02(a-1)(2)(C)." *Becker*, 2020 WL 4873870, at *3.

Mot. at 6, 9.  Thus, without a credible fear of prosecution and with Defendants expressly disavowing prosecution against Plaintiff as long as he meets the requirements of § 46.15(b)(6),

-12-

Plaintiff's allegations fail to establish a ripe actual controversy because there no substantial risk that harm or future injury will occur.

Therefore, the Court finds that the intervening changes in law mentioned above have rendered the Court's conclusions in its Memorandum Opinion and Order no longer viable or appropriate, and that Plaintiff's remaining claims must be dismissed.  Moreover, since all of Plaintiff's claims have been dismissed and Plaintiff has continuously failed to comply with the Court's orders on multiple occasions despite explicit warnings, the Court now dismisses this lawsuit without prejudice without further delay.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED that** Defendants Chief Greg Allen and Officer Francisco Balderrama's "Joint Motion for Reconsideration and Brief in Support" (ECF No. 40) is **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff William Apodaca-Fisk's claims against Defendants Chief Greg Allen and Officer Francisco Balderrama are **DISMISSED WITHOUT PREJUDICE.**

**IT IS MOREOVER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this matter after docketing the Final Judgment to be issued separately on this day.

**So ORDERED and SIGNED this 16th day of February 2021.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**